NATIONAL SURETY COMPANY, A CORPORATION, PLAIN-
TIFF-RESPONDENT, v. THE BOARD OF EDUCATION OF
CLIFTON, IN THE COUNTY OF PASSAIC, DEFENDANT-
APPELLANT.

Argued October 18, 1933—Decided February 2, 1934.

For the plaintiff-respondent, *Frederick M. P. Pearse.*

For the defendant-appellant, *William B. Gourley.*

The opinion of the court was delivered by

PERSKIE, J.  This appeal brings up for review a judgment
of the Supreme Court, which in turn affirmed a judgment of

the Passaic County Circuit Court, directed by Judge Mackay, for the sum of $5,280 damages, and $2,508 interest, totaling $7,788 in favor of the respondent and against the appellant.

On August 23d, 1921, Faillice Brothers entered into a contract with the appellant for the erection of a school building in the sum of $131,000 with a provision of extra compensation for excavation of solid rock. The latter provision is the subject-matter of this litigation.

The specifications contained the following under numeral 12 and captioned "rock:"

"Large boulders shall be sunk below ground floor level in locations as directed by the architect, or shall be removed from off the premises. Should solid rock be encountered at level of bottom of walls, dress the rock to level surface and omit parts of footing as directed.

"If solid rock is encountered, same shall be removed from the premises at unit prices for blasting to be submitted in estimate."

The contractors' bid contained the following notation:

"Rock excavation that requires blasting add $4.00 per cubic yard over earth."

The proof disclosed that the total excavation was two thousand two hundred and one and three-tenths yards and that sixty per cent. thereof, about one thousand three hundred and twenty-one cubic yards, was hard rock. No blasting was done but the rock was removed by some unusual manipulation of a steam shovel. The architect certified payment of the contract price of $131,000 and the cost of this extra excavation work, amounting to $5,280. Thereafter, it appears that some question was raised whether the allowance for the excavation of the hard rock was proper.

The fifth section of the contract between the parties contained the following:

"Fifth: But should any dispute arise respecting the true value of the extra work, or the work omitted, the same shall be valued by two competent persons, one employed by the owner, the other by the contractor, and these two shall have the power to name an umpire whose decision shall be binding on all parties."

On November 15th, 1921, the appellant, in pursuance to the aforesaid provision, adopted a resolution which, in part, read as follows:

"* * * I move further that whereas there is a difference of opinion of experts as to whether there is any rock or not, or the percentage thereof, that it is the recommendation of this committee to the board that the dispute between the contractors who did the excavation and this Honorable Board be submitted to arbitration in accordance with section five of the contract which reads as follows * * *." (Here follows the contract provision above recited.)

Thereafter, by resolution, the board of education selected Russell S. Wise, a civil engineer, and Faillice Brothers selected Anton L. Petterson, a civil engineer, as their respective arbitrators and these two selected one, Harder, city engineer of Paterson, as umpire. Wise and Petterson agreed upon their report without participation by Harder, though it appears that Harder also signed the report. A careful inspection of the premises was made by the two arbitrators and on December 7th, 1921, the arbitrators and umpire submitted a report which, in part, is as follows:

"* * * Although we have ascertained that no blasting was performed in connection with the grading of the school site, we consider it optional and entirely within the judgment and jurisdiction of the contractors to use such means, which in their opinion would be most advantageous to remove from the premises any materials competent to be classified as solid rock under (section 12 Rock) * * *.

"Basing our judgment and decision upon our observations, it is our conclusion that hard rock (brown stone boulders, and red shale rock) were encountered in connection with the excavation of the school site.

"From the appearance of the excavated materials, judging from the formation of the present banks, it would indicate that the rock and shale formation were in layers and shelves intermingled with red sand and gravel, varying from 8 inches to 1½ feet in thickness.

"We feel for that reason that the contractor is entitled to be paid for rock excavation.

"Due to the unevenness of the rock strata we are unable to determine the quantity of materials excavated and percentage of rock encountered."

In the meantime the contractors failed and their surety, respondent, undertook and did complete the undertaking. The appellant refused to pay this item of $5,280 for the excavation of hard rock and also the alleged balance due under the contract. Whereupon the surety instituted this action. The complaint is founded on three counts. The first was on the contract alone based on performance, acceptance and certification by the architect; the second incorporated the allegations of the first count and in addition thereto based the right of recovery on the report of the arbitrators; the third related to the balance under the original contract not now in dispute. There appears to have been no verdict on the first count so that it is not before us. At the trial the report of the arbitrators was offered in evidence. Objection to its admission was made on the grounds that there was no arbitration, therefore there was no validity to their report; that the arbitrators were not sworn; that no notice was given to appellant of the time and place of meeting of the arbitrators; and that no hearing was held. The objection was overruled and exception taken. The trial judge, as already indicated, directed a verdict on the second count. Appellant in its brief states respondent did not press the first count although in its fifth ground of appeal it states that the Supreme Court found that the Circuit Court directed a verdict upon two counts of the complaint for $7,788, &c.

We find no merit in any of the reasons assigned on this appeal by appellant.

Appellant urges strenuously that the court below was in error in its statement that of the several grounds of appeal presented to it only the two grounds of appeal were argued, i. e., that the arbitrators were not sworn and that no notice was given of their meeting, and that in consequence the report was improperly received in evidence. Our study of the

record discloses that appellant confuses the issue involved by arguing matters that vary greatly from the stated grounds of appeal and it may well be that this, in a large measure, is the reason for the statement by the court below. In support of its contention appellant cites the fifth and eighth grounds of appeal it made before the Supreme Court. In order to allay any misgiving we have examined these grounds of appeal. They are as follows:

"No. 5 of the grounds of appeal is as follows:

"The following question put to the witness, John H. Doolittle, was overruled: *Q.* Can you tell us whether you found *any rock* or *not?*"

"No. 8 of the grounds of appeal is as follows:

"The court refused to permit the defendant to show the amount of earth and rock excavated on the ground that said pretended report of the arbitrators was conclusive on that question, whereas said report of the arbitrators was not conclusive because not made according to law."

We find the aforesaid grounds of appeal to be without merit. The fact is that what appellant offered to prove was that no rock was encountered on the job, as described in the specifications. This offer, we think, the court properly overruled because the arbitrators had distinctly found that there was some rock, though they could not say how much, and on the same theory overruled the question put to the witness, Doolittle, as to whether he found *any rock* or *not.* (Examination by Mr. Comstock of Doolittle.)

"*Q.* Can you tell us whether you found *any rock* or *not* * * * ?" Mr. Pearse: "I object, if your honor please, on the ground it has already been found that the arbitration is binding upon the parties and cannot be contraverted by oral testimony." Mr. Comstock: "I offer the evidence to prove that there was not any such rock encountered on this excavation or in the grading as to be entitled to four dollars a cubic yard."

The proof was that the respondent had excavated one thousand three hundred and twenty-one cubic yards of rock. This was known to the board through its architect's certifi-

cation that the contractors were entitled to this item of $5,280. Undoubtedly the court would have allowed proof to dispute the proof offered as to the number of cubic yards excavated but when the offer sought to challenge the award of the arbitrators on the theory that there was no rock at all—it was properly overruled. In this respect, the arbitrators' report was conclusive and binding on all parties to the controversy.

We desire to make the observation that the proviso in question: "If the solid rock is encountered same shall be removed from the premises at unit price for blasting to be submitted in estimate," does not mean that the contractors were not entitled to extra compensation for removing solid rock unless they removed it by blasting. It seems to us that the unit price per cubic yard, for the excavation of the solid rock encountered and removed is stated in the notation of the contractors' bid, "rock excavation that requires blasting $4 per cubic yard over earth." If the contractors were able to remove the rock in some fashion other than by blasting—as it did by the use of a steam shovel—they were at liberty to do so and were entitled to be paid at the agreed price per cubic yard of rock so removed.

In the case of *First Ecclesiastical Society, &c.,* v. *Besse (Conn.),* 119 *Atl. Rep.* 903, and the cases therein cited, it was held substantially that where it appears that the agreement between the parties was designed to leave to the decision of persons to be selected questions of amount, quality, value or price which might come up during or after the performance of the contract, it has been said that a reference agreed on for such a purpose is not an arbitration in the accepted legal sense of the word, because an arbitration is a method adopted to settle already existing controversies, whereas a reference of this kind is intended to affect only possible future controversies; and that the latter, accurately speaking, is an appraisement or estimate.

We concur in the conclusion reached by the Supreme Court that the submission to the arbitration was not the outgrowth of litigation, it was not made a rule of court to determine

the issues between the parties, and was not for the determination generally of the issues between the parties.

We are of the opinion, as was the Supreme Court, that the report in question was neither a common law award nor was it an award under our statute, but that it was rather a reference as is illustrated in the cases of *American Central Insurance Co.* v. *Landau,* 62 *N. J. Eq.* 73 (at *p.* 93) ; *Stout* v. *Phoenix Assurance Company of London,* 65 *Id.* 566 (at *p.* 570), and the cases therein cited, and therefore the objections directed at it are without merit. See, also, *Kaplan* v. *Niagara Fire Insurance Co.,* 73 *N. J. L.* 780 (at *p.* 786).

Judgment is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, CASE, BODINE, PERSKIE, KAYS, HETFIELD, DEAR, DILL, JJ. 8.

*For reversal*—THE CHANCELLOR, PARKER, DONGES, HEHER, WELLS, JJ. 5.